# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GLEANICE BROWN, <br> LATONDRA MOORE, and <br> TAMARA SOLOMON, <br><br> Plaintiffs, <br><br> v. <br><br> KANSAS CITY, MISSOURI BOARD <br> OF POLICE COMMISSIONERS, et al., <br><br> Defendants. | Case No. 4:20-CV-00920-DGK |

## ORDER GRANTING FRATERNAL ORDER OF POLICE SUMMARY JUDGMENT

Plaintiffs are female African Americans who were formerly detectives in the Crimes Against Children Unit ("CAC") of the Kansas City, Missouri, Police Department ("KCPD"). They allege their immediate supervisors in the CAC discriminated against them based on their race, age, and gender, and the KCPD discriminated against them in how it punished them for procedure and policy violations. All three Plaintiffs are suing under various federal civil rights laws for discrimination, retaliation, and harassment based on race, age, and gender.

Plaintiff Tamara Solomon ("Solomon") is also suing the labor union of which she was formerly a member, Defendant Missouri Fraternal Order of Police, Lodge #99 ("FOP"). Solomon is suing the FOP for not providing her legal representation during her termination hearing before the Kansas City, Missouri, Board of Police Commissioner, for being involved in a domestic violence incident while off duty. Solomon alleges the FOP refused to provide her legal representation because of her race and sex.

Now before the Court is the FOP's Motion for Summary Judgment. ECF No. 118. Because there is no evidence that Solomon's race or gender played any role in the FOP's decision,

the motion is GRANTED.

## Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must substantiate her allegations with "sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

## Undisputed Material Facts

To resolve the motion, the Court must first determine the material undisputed facts. The Court has limited the facts to those that are undisputed and material to the pending summary judgment motion.[1] *See* Fed. R. Civ. P. 56(c) (emphasis added); L.R. 56.1(a). The Court has

---

[1] For example, Solomon's proposed facts include many facts that are immaterial to resolution of the pending summary judgment motion, such as the details of the KCPD's investigation into the January 7, 2018, domestic violence episode involving Solomon and her spouse. Solomon contends the lead detective in this investigation was biased against and made numerous misstatements that led to her wrongly being labeled the suspect.

2

excluded legal conclusions, argument presented as fact, and proposed facts not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). It has included proposed facts that are material and which have been improperly controverted.[2] *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

The Court finds the material undisputed facts to be as follows.

---

[2] In her response, Solomon repeatedly attempts to establish or controvert facts by citing her deposition testimony or her affidavit, but the cited testimony does not support her assertion or was a conclusion based on speculation or conjecture. For example, she asserts, "In its entire history, every person the Defendant FOP has denied providing a legal defense to was a black officer." Pl.'s Additional Statements of Uncontroverted Material Facts #15. For support, she cites to her deposition transcript, page 192 line 18 through page 193 line 6. This testimony does not support the proposed fact. It reads:

```
18    Q.    Okay. It is your belief and opinion
19          that the FOP's decision to not provide you legal
20          representation at your termination appeal was
21          motivated by your race and/or sex?

22    A.    Yes.

23    Q.    And can you tell me why you believe
24          that?

25    A.    Because myself, as a black female, was
```

[Page 193]

```
1           not represented, when I know that they represent
2           white males and white females.

3     Q.    But you don't -- you can't actually
4           identify any white male or female that they've
5           represented at a termination appeal, correct?

6     A.    Not by name.

7     Q.    By any other means? I mean, do you
8           know a time period? Do you know anything?

9     A.    Not at this moment.
```

Solomon Dep., ECF No. 129-50 (lines 7–9 included for the sake of completion).

3

**Background**

Solomon is an African American female and former police officer with the KCPD. Defendant FOP is a labor union and the exclusive authorized representative of all sworn personnel of the KCPD below the rank of Captain. Brad Lemon ("Lemon") is the FOP's President and has held that position for the past nine years. He has held an executive position with the FOP since 2009.

As President, Lemon oversees the FOP's day-to-day business operations. The Executive Board meets to carry out the FOP's business affairs and vote on key matters such as whether to provide a legal defense to members disciplined by the KCPD.

Solomon became a full FOP member in 2005. In 2019, when the FOP allegedly failed to provide her legal representation because of her race and sex, she was a member in good standing.

**The FOP's Legal Defense Plan**

Article 23 of the FOP's Constitution and By-Laws, titled "Benefits Program," requires the establishment and maintenance of a Legal Services Plan, otherwise referred to as the Legal Defense Plan ("the Plan"). The current Plan was adopted in 2015. All active FOP members in good standing and working for the KCPD are eligible to participate in the Plan and receive its benefits.

The Plan covers a legal defense and appropriate legal challenges to "adverse administrative actions" and "criminal action or proceeding brought against the Member, arising directly out of the Member's activities in the scope of employment . . ." Under the Plan, "scope of employment" is defined as "all activities of a member while on duty in connection with Employment, and all law enforcement activities authorized or required by the Member's Employment, whether on or

4

off duty." Covered activities includes things like allegations of excessive use of force while on duty. The Plan explicitly excludes coverage for occurrences involving activities that are not in the scope of employment. The Plan states that disciplinary matters subject to a hearing before the KCMO Board of Police Commissioners ("BPC") shall be processed in accordance with FOP's duty of fair representation, but that all coverage determinations are at the "absolute discretion of the Executive Board."

**The MOU between the KCMO BPC and the FOP**

From 2017 until 2021, a written Memorandum of Understanding agreement ("MOU") between the KCMO BPC and the FOP was in place. The MOU explicitly states that the MPC has the right to "[d]iscipline, demote or discharge for cause as exclusively determined by the Board of Police Commissioners pursuant with Chapter 84 of the Missouri statutes." The MOU covers "Internal Affairs Procedures." Members such as Solomon are allowed to have representation during interviews in an internal affair investigation so long as the representative is a sworn member of the KCPD. Further, the representative "shall not be allowed to interfere with or disrupt the interview process" but can only, after the questioning, confer with the employee and determine if any answers need to be clarified. There is nothing within the MOU that allows FOP to stop an internal affairs investigation or to stop the KCPD from proceeding with disciplinary action against a bargaining unit member. When a bargaining unit employee is under investigation by the BPC, that employee has a duty to participate in the investigation.

The MOU does not establish or otherwise provide a mechanism for FOP to grieve disciplinary actions issued to bargaining unit members. Depending on the level of discipline issued, a bargaining unit member can either appeal to the KCMO BPC or a grievance committee.

5

Disciplinary actions involving termination, demotion, or suspension of fifteen days or more, may only be appealed to the KCMO BPC. Suspensions of fourteen days or less, letter of reprimand, or disciplinary counseling, may be appealed to either a Grievance Committee or the Chief of Police. Appeals of disciplinary actions to the KCMO BPC, a Grievance Committee, or the Chief of Police are not addressed in the MOU.

**The FOP Defended Solomon During the CAC Investigation**

Solomon started working for the KCPD in August 2004. During her employment there she worked in the CAC. In November 2015, KCPD began reporting deficiencies in Solomon's casework. Solomon was transferred out of the CAC around January 2016. On May 16, 2018, Solomon was provided with a Personnel Incident Report regarding a miscellaneous investigation regarding improper procedure within the CAC.

On October 22, 2018, Solomon reported to the KCPD and the FOP that she felt discriminated against on the basis of her sex and race as it pertained to the CAC investigation. FOP President Lemon agreed with Solomon and felt there may be a racial and sexual element in the KCPD's investigation and recommendations as it pertained to her work in the CAC Unit.

In January 2019, Solomon was notified by KCPD that she was being suspended for seven days and subject to a disciplinary transfer because of the CAC investigation. At the time Solomon was notified about this discipline, she was notified of her appeal rights. The FOP represented Solomon at all the interviews she gave during the investigation as it pertained to the CAC investigation.

Lemon asked Solomon whether she wanted assistance from the FOP in appealing her seven-day suspension to a Grievance Committee. Solomon chose not to appeal her seven-day

suspension to a Grievance Committee or the Chief of Police because the investigation was very stressful. Although Lemon offered FOP assistance, Solomon nonetheless believes the FOP discriminated against her because of her race and gender as it pertains to the CAC investigation because it did not involve the attorneys enough and did not stop the CAC investigation.

**Solomon's Termination from the KCPD**

On or about January 7, 2018, Solomon and her spouse got into a domestic disturbance. A 911 call was placed by one of their minor children, and police responded to Solomon's residence. Solomon was not on duty at the time this incident occurred.

Solomon cooperated with the police in the subsequent criminal investigation. The BPC wrongly believed she did not. The detective in charge of the criminal investigation initially classified Solomon as a victim, but later changed Solomon's status to suspect. Solomon believes the detective's statements regarding the investigation were dishonest and misleading, including falsely claiming she was not cooperative, and that her status was reclassified to suspect because of her race and sex and in retaliation for her making discrimination complaints against the BPC.

On May 9, 2018, Jackson County Prosecutor Jean Peters Baker sent the KCPD Chief of Police a letter regarding concerns of Solomon's children, her failure to participate in the subsequent criminal investigation, and *Brady v. Maryland* concerns from Solomon's multiple domestic violence situations.

On or about June 27, 2018 (prior to receiving the seven-day suspension for the CAC investigation), Solomon was notified via letter from the KCPD Chief of Police that the Jackson County Prosecutor's Office was concerned about Solomon's conduct that was the subject of a criminal investigation. As a result, the KCPD was suspending Solomon's off duty employment

privileges and an Internal Affairs Investigation was being initiated. Solomon assumed the incident(s) referenced in the letter pertained to the CAC investigation; she had no idea it pertained to the January 7, 2018, domestic violence incident.

Solomon contacted Lemon after receiving the Police Chief's June 27, 2018, letter. Lemon told Solomon he would look into it. He later told Solomon that she was under investigation, but he didn't have any further details.

On December 18, 2018, Solomon gave a statement to internal affairs as it pertains to the January 7, 2018, domestic violence incident. Solomon does not recall asking for a FOP representative for this interview.

Prior to submitting to the interview, Solomon assumed it pertained to the ongoing CAC investigation. After learning at the interview that the investigation was about the January 7, 2018, domestic violence incident, Solomon did not contact Lemon and inform him about the investigation.

On March 13, 2019, Solomon received a personal incident report regarding the investigation into the domestic violence incident. On March 17, 2019, Solomon responded in writing to the report's allegations. Solomon did not inform Lemon about the Personnel Incident Report or ask for assistance in crafting her March 17, 2019, response.

On or about April 9, 2019, Solomon was told by Captain Luster that he was recommending Solomon be terminated. Solomon had a FOP member at this meeting. On or about August 22, 2019, Solomon was presented with documentation from the Chief of Police stating she was suspended without pay pending the outcome of a hearing before the BPC.

Lemon was not contacted by Solomon as it pertains to the investigation of the January 7,

2018, domestic violence incident from the time Solomon received the Personnel Incident Report on March 13, 2019, up to receiving her the August 22, 2019, letter. Lemon knew nothing about the internal investigation into Solomon until she provided him a copy of the August 22, 2019, letter.

On or about August 27, 2019, Solomon had a meeting with Lemon and a FOP attorney. Solomon told Lemon that she intended to appeal her termination recommendation with or without the assistance of FOP attorneys.

On August 30, 2019, attorney Nicholas Ruble ("Ruble") emailed Solomon draft language for her to appeal her termination to a hearing before the KCMO BPC. In the same email, Ruble informed Solomon that the FOP's Executive Board was going to meet and decide whether to cover her costs of representation at the appeal hearing.

On October 1, 2019, the FOP's Executive Board unanimously voted not to provide legal counsel for Solomon's appeal to the KCMO BPC primarily because it believed the underlying incident Solomon was facing termination for—an off duty domestic violence at her residence—was not in the scope of her employment as a police officer. The FOP also considered: (1) that Solomon had been involved in multiple domestic violence cases which prompted the Jackson County Prosecutor to make a child abuse hotline call; (2) its belief that Solomon intended to inhibit the BPC's investigation, which would be detrimental to the FOP and negatively affect the public's view of law enforcement; and (3) its believe that the likelihood of success in the appeal was low.

The FOP did not know what happened in the January 7, 2018, domestic violence episode. It only knew what the allegations were.

Lemon told Solomon that the FOP Executive Board voted not to provide her legal

9

representation at her KCMO BPC hearing because it was not department related. Solomon is unaware of any specific male KCPD police officer(s) or Caucasian KCPD police officer(s) that have been provided legal representation by the FOP at disciplinary appeal hearings. Finally, Solomon has never heard Lemon make any type of racial slur or a sexist comment.

Solomon represented herself at her hearing before the KCMO BPC, which took place on December 3, 2019. After the hearing, the BPC voted to terminate Solomon's employment.

**Officers who Have been Provided Legal Representation Under the Plan**

Since the implementation of the Plan, the FOP has provided legal counsel for three officers' appeals to the KCMO BPC. These officers were James Carmody, Hershel Rodgers, and James Peeler. Hershel Rodgers is African American. Lemon believes one of the other two may have been Asian Pacific (Lemon never asked his ethnicity); the third was Caucasian. All three faced discipline over conduct that occurred within the scope of their employment as law enforcement officers. At no point since at least 2009 has the FOP provided legal counsel for any type of disciplinary appeal for alleged violations that were not in the scope of the member's duties as a law enforcement officer.

**Solomon's EEOC Charges**

Solomon filed several EEOC Charges of Discrimination. The only discriminatory conduct she alleged against the FOP in her EEOC Charges is that she was not provided legal counsel while Caucasian males were provided legal counsel.

**Solomon's Damages**

Solomon believes FOP representation would have made a difference at her appeal hearing. She believes that had the FOP provided a legal defense at the hearing, she would not have lost her

10

Case 4:20-cv-00920-DGK   Document 159   Filed 01/17/24   Page 10 of 18

job, and she thereby suffered lost wages, benefits, pain and suffering, anxiety, inconvenience, embarrassment, mental distress, and insult.

In fact, since 2009 there has never been a Notice of Termination overturned by the BPC, with or without FOP provided legal representation.

## Discussion

Counts XV, XVIII, and XIX of the Third Amended Complaint apply to the FOP. Counts XV and XIX are brought pursuant to Title VII, 42 U.S.C. §§ 2000(e) 2(a), 2000(e) 3(a), and alleges the FOP discriminated against Solomon and harassed her by failing to provide her legal counsel because of her race (African American) and sex (female).[3] Count XVIII is brought via 42 U.S.C §§ 1981, 1983 and alleges discrimination in contracting based on Solomon's race, asserting she was subjected to different terms than those given to Caucasian's in the same or similar situations. The FOP moves for summary judgment on all three counts.

**I.     The FOP is entitled to summary judgment on all § 1983 claims.**

As a threshold matter, summary judgment is granted with respect to that portion of Count XVIII (and any other portion of the Third Amended Complaint) alleging the FOP is liable under 42 U.S.C. § 1983. The FOP argues it is entitled to summary judgment on any § 1983 claims because the Third Amended Complaint does not allege that the FOP was acting under color of state law or conspired with Defendant KCPD, thus it cannot be liable under § 1983. *See Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 536 (8th Cir. 2014) (observing a police union is generally not a state actor and absent some "meeting of the minds" between the union and a state

---

[3] Count XV variously alleges the FOP discriminated against her based on her "sex" (¶ 324) and her "race and gender" (¶ 327). The Court interprets the allegations to allege discrimination based on race and sex, construing the allegations as broadly as possible while still consistent with the rest of the Third Amended Complaint.

11

actor, a police union is not liable under § 1983). Solomon does not dispute this argument, so it is waived. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). The Court grants summary judgment to Defendant FOP on all § 1983 claims.

**II.     The FOP is entitled to summary judgment on all harassment claims.**

Counts XV and XIX allege harassment based on race and sex, and it appears they are brought both against both her actual employer, the KCPD, and the FOP. The FOP moves for summary judgment on any harassment claims. It notes that the only possible harassment allegation against it is that the FOP failed to conduct a prompt investigation into the KCPD after Solomon complained of race and gender discrimination by the KCPD. It argues an allegation that a labor union did not promptly investigate discrimination allegations against the employer is insufficient to support a harassment claim. *See Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1076–77 (8th Cir. 2005) (holding a union does not have a duty under Title VII to investigate and take steps to remedy employer discrimination). Additionally, labor unions have no duty to take remedial action for the discriminatory acts of individual members. *See id*. at 1077. Finally, it contends the act of not investigation Solomon's discrimination claim against the KCPD is not the kind of "severe and pervasive" conduct that is actionable as a hostile environment claim.

Solomon does not dispute these arguments, so any opposition to them is waived. *Satcher*, 558 F.3d at 735. The Court grants summary judgment to Defendant FOP on all harassment claims.

12

Case 4:20-cv-00920-DGK   Document 159   Filed 01/17/24   Page 12 of 18

## III. The FOP is entitled to summary judgment on the race and sex discrimination claims.

The Court now turns to the heart of Solomon's lawsuit against the FOP, namely her claims that the FOP discriminated against her by not providing her with legal representation before the KCMO BPC.

Under Section 703(c)(1) of Title VII, it is "an unlawful employment practice for a labor organization . . . to discriminate against[ ] any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(c)(1)(emphasis added). Similarly, 42 U.S.C. § 1981 prohibits discrimination based on race or ethnicity (but not sex), in the making and enforcement of contracts. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).

The FOP alleges, and Solomon does not dispute, that she has no direct evidence of discrimination, thus she must prove intentional discrimination under the *McDonnell Douglas* burden-shifting framework. *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015); *see Davis v. KARK-TV, Inc.*, 421 F.3d 699, 703 (8th Cir. 2005) (holding § 1981 claims are analyzed in the same manner as Title VII claims.) Under that framework, Solomon must first establish a prima facie case. *Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 958 (8th Cir. 2015). If she does, then the burden shifts to the FOP to offer legitimate, non-discriminatory reasons for its actions. *Id.* If the FOP can establish a legitimate, non-discriminatory reason for doing so, the burden shifts back to Solomon to prove the FOP's reasons were a pretext for discrimination. *Id.*

The FOP contends that, assuming for the sake of argument Solomon can establish a prima facie case, it had a legitimate, non-discriminatory reason for not providing her legal counsel before the KCMO BPC, namely, the Plan explicitly excludes coverage for actions taken outside the course and scope of employment as a KCPD officer. The FOP points out that Solomon's January 7,

13

2018, domestic violence episode occurred when she was not on duty and was outside the course and scope of her employment. Thus, the Executive Board had a legitimate, non-discriminatory reason not to provide Solomon with legal counsel at her BPC appeal hearing, and so the burden shifts back to Solomon to show the Executive Board's decision was pretext for race or sex discrimination. It contends she cannot make this showing because since the Plan's inception only three people—one of which was African American—have been provided legal representation, and the conduct at issue in all three cases occurred within the course and scope of their employment as KCMO police officers. At no point in the last fifteen years has the FOP provided legal representation for any officer accused of misconduct or policy violations outside the course and scope of their employment.

Solomon does not dispute that the FOP has identified a legitimate, non-discriminatory reason for its decision, but she argues there is a material issue of fact here whether the stated reason is pretextual. First, she contends the domestic abuse episode was within the course and scope of her employment because the KCPD cited her for violations of KCPD/BPC policy in connection with the incident, thus bringing the investigation within the scope of her employment. Second, she asserts the Plan's language *does* provide a legal defense for off duty actions. Third, she alleges the record supports a reasonable inference that the FOP refused to provide a legal defense because of her race and gender because it has used the "off duty" rationale to deny other African American officers a legal defense, suggesting African American officers were treated differently. Fourth, she claims the Executive Board's decision was influenced by the fact that the January 7, 2018, incident involved domestic violence, and it did not want to be seen as providing a legal defense to officers who allegedly beat their wives. Had the Executive Board reviewed any

14

evidence about the domestic abuse incident, it would have shown that she was the victim in the incident, not the aggressor. All the above, she asserts, show pretext.

The Court holds the FOP has established a legitimate, non-discriminatory reason for its decision, and it was not pretextual.

With respect to Solomon's first two points, the January 7, 2018, off duty domestic violence episode was plainly outside the course and scope of her employment, and the Plan provides coverage only for proceedings "arising *directly* out of the Member's activities in the scope of employment." "Scope of employment" is defined as "all activities of a member while on duty in connection with Employment, and all law enforcement activities authorized or required by the Member's Employment, whether on or off duty." The domestic violence incident occurred in her home, while she was off duty, a domestic violence is not an activity authorized or required by her employment. The fact that the KCPD/BPC subsequently fired her for violating KCPD/BPC policy in connection with this incident did not bring it within the course and scope of her employment. If it did, then every time an officer was cited for a policy violation, the officer would be acting in the course and scope of his or her employment. In this way, any conceivable felony a FOP member could commit while off duty—evading taxes, violating the Mann Act,[4] engaging in piracy on the high seas—could be acting in the scope of employment. Such an interpretation is completely incompatible with the text of the Plan.

Solomon's third point is similarly meritless because to show pretext she must do more than allege that black officers were denied coverage for an off-duty incident which was not within the

---

[4] The Mann Act, now codified at 18 U.S.C. § 2421, prohibits knowingly transporting any person across state lines with intent that such individual engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

15

scope of their employment; she must show a similarly situated FOP member outside of her protected class was treated differently. *See Lake v. Yellow Trans*., Inc., 596 F.3d 871, 873-74 (8th Cir. 2010). That is, she must show the FOP provided legal assistance to a non-African American officer who was being fired for conduct outside the scope of his or her employment as a law enforcement officer. This she cannot do. She has not identified a single officer the FOP provided legal assistance to in circumstances analogous to hers. In fact, the record demonstrates the FOP provided legal coverage to all officers, regardless of their race, who faced discipline for conduct occurring *within* the scope of their employment, and it did not provide any legal coverage to any officer who faced discipline for conduct occurring *outside* the scope of his or her employment.

Finally, Solomon's fourth point is unavailing. The argument here is that the FOP breached its duty of fair representation because she was innocent, and if the FOP had conducted a fair review of the disciplinary allegations, it would have realized this. The FOP did not provide the required legal defense in part because it was worried about its image and did not want to be seen as providing a legal defense to officers who allegedly "beat" their wives. Solomon contends the FOP's "flagrant unwillingness to uphold their duty of fair representation shows that Solomon's race and gender was a determinative factor in Defendant refusing to provide her with a legal defense." Suggestions in Opp'n at 68, ECF No. 142.

This argument is unpersuasive for two reasons. First, the record is unequivocal that the FOP's decision was driven almost entirely, if not entirely, by its belief that the Plan excluded coverage because the January 7, 2018, domestic violence incident was outside the scope and course of Solomon's employment. Granted, the FOP was aware Solomon had been previously involved

16

in domestic violence episodes, and it was also aware that she was accused of assaulting her spouse in front of their children on January 7, 2018, and then not cooperating with the subsequent criminal investigation into the incident—allegations which for summary judgment purposes the Court considers were untrue. While the FOP may have been relieved it did not have to provide legal assistance to an officer accused of domestic violence, it did not decline to provide coverage because she was accused of domestic violence.

Second, even assuming the FOP's sole reason to deny coverage was it did not want to be perceived as defending "wife-beating" officers, this is not evidence that the stated reason was pretext for *discrimination*. It would be evidence that the FOP's stated reason was pretext to protect its public image, something which is not unlawful under either Title VII or § 1981. *See St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for *discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."); *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551-52 (8th Cir. 2005) (affirming summary judgment where the employee could show the employer's stated reason for firing him was false but could not show it was pretext for racial discrimination).

Because the FOP has established a legitimate, non-discriminatory reason which Solomon cannot demonstrate was pretext for race or sex discrimination, the FOP is entitled to summary judgment on Solomon's race and sex discrimination claims in Counts XV, XVIII, and XIX.

## Conclusion

For the reasons set forth above, the FOP's Motion for Summary Judgment, ECF No. 118, is GRANTED.

**IT IS SO ORDERED.**

Date: January 17, 2024                     /s/ Greg Kays
                                           GREG KAYS, JUDGE
                                           UNITED STATES DISTRICT COURT